UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

COMMONWEALTH OF MASSACHUSETTS,

Plaintiff,

v.

FEDERAL HOUSING FINANCE AGENCY, FEDERAL HOME LOAN MORTGAGE CORPORATION, and FEDERAL NATIONAL MORTGAGE ASSOCIATION,

Defendants.

Case No. 14-12878

(Leave to file granted on August 18, 2014.)

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

Defendants' Arms'-Length Transaction ("ALT") requirement and make-whole policy fall within the core powers and functions of FHFA in its capacity as Conservator of the Enterprises, and thus Section 4617(f) of HERA bars the Commonwealth's challenge to these policies. Moreover, federal law prohibits the state from dictating when, to whom and at what price the Defendants shall sell their collateral or property. Therefore, the state statute that the Commonwealth seeks to enforce—which *does* purport to dictate the terms of sale of Defendants' property—is preempted as applied to Defendants.

The Commonwealth responds that "Defendants' sweeping arguments would insulate *all* of defendants' activities" from judicial review. Opp. at 1 (emphasis in original). That is wrong. The Court plays a critical role in applying Section 4617(f): The Court must determine whether the relief sought would restrain or affect a power or function of the Conservator; if (as here) it would, the Court is without jurisdiction to grant the relief sought. Similarly, preemption requires the Court to determine whether Congress enacted a statute that expressly supersedes state law (as

1

it did here), a state statute conflicts with federal law (as it does here), or federal law occupies a field so pervasively that Congress left no room for state law to apply (as is the case here).

That Congress granted the Conservator broad powers does not make the Conservator "sacrosanct" or otherwise "insulate *all* of Defendants' activities" from the proper realm of the Court's review, *see* Opp. at 1; rather, the Commonwealth's claims simply fail as a matter of law. Accordingly, this Court should dismiss the Commonwealth's Complaint.

## ARGUMENT

**I. SECTION 4617(f) BARS THIS ACTION**

Section 4617(f) prohibits courts from taking "any action to restrain or affect the exercise of powers or functions of [FHFA] as a conservator . . . ." 12 U.S.C. § 4617(f). As Conservator, FHFA has the statutory power to "operate the [Enterprises] with all the powers of the shareholders, the directors, and the officers," to "conduct all business of the Enterprises," and to "preserve and conserve the [Enterprises'] assets and property." 12 U.S.C. § 4617(b)(2)(B). *See also Leon County v. Fed. Hous. Fin. Agency*, 700 F.3d 1273, 1278-79 (11th Cir. 2012) (Conservator's powers include "marshaling, protecting, and managing assets."). Accordingly, "[d]irecting protective measures against perceived risks is squarely within FHFA's powers as a conservator." *Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012). The ALT requirement and make-whole policy protect the assets of the Enterprises from risks that FHFA has identified and are therefore within the powers and functions of the Conservator. *See* Mot. at 5 (explaining the purpose of these requirements). By seeking to enjoin Defendants from implementing those prudential policies, the Commonwealth demands relief that would "restrain or affect" the Conservator's exercise of its powers, relief this Court is without jurisdiction to consider or grant. For that reason, Section 4617(f) requires dismissal.

The Commonwealth says that Section 4617(f) is inapplicable because the Enterprises purportedly developed the policies without any "acts" by FHFA. Opp. at 7-8. This argument contradicts the Commonwealth's own Complaint, which names FHFA as a Defendant, alleges (correctly) that FHFA issued directives and implemented the challenged policies,[1] and seeks injunctive and declaratory relief against FHFA. In any event, Section 4617(f) does not speak to judicial review of the Conservator's "acts"; instead, it expressly prohibits courts from "tak[ing] any action to restrain or affect the exercise of powers or functions of the [Conservator]." Because the Commonwealth seeks relief that would necessarily "restrain or affect" the Conservator's ability to "marshal[], protect[], and manag[e]" the Enterprises' assets as it sees fit, Section 4617(f) bars the claim. *See Leon County*, 700 F.3d at 1278-79. The Commonwealth's (incorrect) speculation that FHFA merely gave "after-the-fact" approval to policies that the Enterprises created on their own is plainly irrelevant to the "restrain or affect" determination.[2] *See* Opp. at 7-8.

The Commonwealth also argues that the policies fall outside the Conservator's "powers or functions." That argument fails as well. Courts have long recognized that foreclosures and sales of assets are squarely within the powers of conservators and receivers of financial

---

[1] *See, e.g.*, Compl. ¶¶ 1, 16, 19, 29. *See also* Federal Housing Finance Agency - Office of Inspector General, *FHFA's Oversight of the Servicing Alignment Initiative* at 2 (Feb. 12, 2014) ("As the Enterprises' conservator, the Federal Housing Finance Agency (FHFA or Agency) established the Servicing Alignment Initiative (SAI) in April 2011 to improve the servicers' performance and thereby limit the Enterprises' financial losses."), *available at* http://fhfaoig.gov/Content/Files/EVL-2014-003.pdf.

[2] The Commonwealth misconstrues the Conservator's delegation of day-to-day operations to Enterprise management as a transfer of statutory power. Opp. at 6-7, 12. Although FHFA has delegated day-to-day decisions (subject to the Conservator's oversight) to Enterprise management, FHFA as Conservator continues to hold "any and all powers of the Enterprises' boards, executives, and shareholders, including the powers to . . . [c]ontrol and operate as many or as few aspects of the Enterprises' operations, as desired." FHFA-Office of the Inspector General, *White Paper: FHFA OIG's Current Assessment of FHFA's Conservatorships of Fannie Mae and Freddie Mac*, WPR-2012-001, at 17 (Mar. 28, 2012), *available at* www.fhfaoig.gov/Content/Files/WPR-2012-001.pdf.

institutions and therefore statutorily protected from interference. *See, e.g.*, *Sunshine Dev. v. FDIC*, 33 F.3d 106, 112 (1st Cir. 1994) (collecting cases about foreclosure sales); *Sahni v. American Diversified Partners*, 83 F.3d 1054, 1058-59 (9th Cir. 1996) (collecting cases about other asset sales). The Commonwealth selectively quotes statements from the Property Assessed Clean Energy ("PACE") cases, Opp. at 8-9, 12, but the analysis and holdings of these cases directly contradict the Commonwealth's position. As in the PACE cases, the Conservator is "[d]irecting protective measures against perceived risks," *see Babylon*, 699 F.3d at 227, by instructing the Enterprises to avoid a narrowly defined category of transactions. The Commonwealth correctly acknowledges that the risks associated with PACE were a proper "subject of concern for FHFA in its role as [C]onservator." Opp. at 9. It then contends that PACE was somehow different because PACE programs had a "narrow field of operation" while the ALT and make-whole policies apply "across the board,"[3] but no such distinction exists. Both PACE and the ALT/make-whole policies can be characterized as broad or narrow: Each applies broadly to all of the Enterprises' mortgages, addressing contingencies that materialize in only a narrow subset of transactions.[4]

The Commonwealth also tries to distinguish the cases supporting Defendants' positions by pointing out that they involved FDIC receiverships rather than conservatorships. Opp. at 10-

---

[3] The Commonwealth's characterization of the breadth of ALT and make-whole policies changes from paragraph to paragraph; sometimes it describes them as "across the board" policies that "bear all the hallmarks of rules," Opp. at 12, and other times it says that they are "day-to-day business activities" undertaken "in the ordinary course of operations," Opp. at 1, 12.

[4] Moreover, the Commonwealth misstates the "narrow field" factor. As the Ninth Circuit recognized, "nothing precludes a conservator from making business decisions that are both broad and scope and entirely prospective." *Sonoma*, 710 F.3d at 994. Also, the Commonwealth erroneously assumes that there can be no overlap between the conservatorship and regulatory authority. As the D.C. Circuit noted when discussing the overlap between the FDIC's powers as conservator or receiver and its powers in its corporate capacity, "[t]he FDIC has discretion regarding whether it will wear one hat or the other, or both." *Nat'l Trust for Historic Preservation v. FDIC*, 21 F.3d 469, 471 (D.C. Cir. 1994).

4

11. This argument fails because the governing statutes apply equally to conservatorships *and* receiverships. The FDIC provision states that "no court may take any action … to restrain or affect the exercise of powers or functions of the Corporation as a *conservator or a receiver*." 12 U.S.C. § 1821(j) (emphasis added). Courts consistently apply it to conservatorships and receiverships with equal force. *See, e.g.*, *Gross v. Bell Savings Bank*, 974 F.2d 403, 408 (3d Cir. 1992). Section 4617(f) is substantively identical: "[N]o court may take any action to restrain or affect the exercise of powers or functions of the Agency [*i.e.*, FHFA] as a *conservator or a receiver*." (Emphasis added.)

In sum, the ALT and make-whole policies are squarely within the Conservator's powers and functions, and § 4617(f) bars the Commonwealth's demand for relief that would "restrain or affect" the Conservator's power to implement them.[5]

## II. HERA PREEMPTS THE BUYBACK PROVISION

### A. HERA Expressly Preempts Section 35C(h)

HERA preempts any state law such as Section 35C(h) that would subject the Conservator to "the direction or supervision of . . . any State." Mot. at 13 (quoting 12 U.S.C. § 4617(a)(7)). The Commonwealth's response is that Section 35C(h) is "far removed" from the Enterprises' core business of mortgage lending and securitization, and Section 4617(a)(7) does not sufficiently convey a "clear and manifest purpose" to preempt Section 35C(h). Opp. at 13-15.[6]

---

[5] The Commonwealth apparently concedes that HERA expressly bars the Complaint's demand for penalties, since it does not respond to Defendants' argument. *See* Mot. at 12 n.10.

[6] The Commonwealth also responds that the Non-Profits Buyback Provision "does not 'direct' FHFA in any manner" as the Enterprises' Conservator. Opp. at 14. The plain language of the provision, which directs the Enterprises not to require certain conditions for sale or transfer of property, refutes this argument. The Commonwealth argues that it does not direct the Conservator to do something but merely directs it *not* to do something. Opp. at 14. This is a semantic game. By that logic, a state could get around Section 4617(a)(7) and direct the Conservator to do anything simply by prohibiting the alternatives.

This reasoning contains multiple errors. *First*, mortgage lending and the sale of real estate are inextricably linked, not "far removed" from each other, and courts have uniformly recognized that the sale of assets is clearly within the powers of conservators and receivers of mortgage lenders. *See Sunshine Dev. v. FDIC*, 33 F.3d at 112; *Sahni*, 83 F.3d at 1058-59. *Second*, Section 4617(a)(7) satisfies any "clear and manifest purpose" requirement. The Commonwealth seeks to use Section 35C(h) to compel the Conservator to sell properties to certain parties on specified terms, which is exactly the kind of state "direction" expressly forbidden by Section 4617(a)(7). *City of Joliet v. New West L.P.*, 562 F.3d 830 (7th Cir. 2009), which the Commonwealth deems "instructive," is not on point because HERA contains a clear statement of express preemption of state law, whereas the federal statute in *New West* contained only "'findings' and 'purposes' clauses" without any reference to state law. 562 F.3d at 834-35.

### B. HERA Conflicts with Section 35C(h)

Section 35C(h) is also preempted because it conflicts with and frustrates the purposes of HERA, which permits the Conservator to "transfer or sell any asset . . . without any approval, assignment, or consent" from another party. Mot. at 16-18 (quoting 12 U.S.C. § 4617(b)(2)(J)). The Commonwealth responds that Section 35C(h) does not limit the Conservator's or the Enterprises' ability to "freely sell" assets; it merely states that if an Enterprise receives an offer to buy a property, the Enterprise "may not refuse" to sell if it would sell at the same price to a different buyer. Opp. at 16. That is doublespeak: Mandating that the Enterprises and Conservator "may not refuse" offers from certain, state-preferred buyers that include certain, state-preferred terms unquestionably restricts the Conservator's ability to sell property on terms of its choosing, thereby violating Section 4617(b)(2)(J). As the Second Circuit observed when rejecting a claim that the FDIC must sell certain property to the highest bidder, the materially identical FIRREA provision grants the FDIC "broad discretion" in the disposition of assets and is

6

inconsistent with a mandatory "competitive bidding" requirement or other restrictions on "the manner in which the FDIC chooses to dispose of its assets." *Gosnell v. FDIC*, 938 F.2d 372, 376 (2d Cir. 1991). Similarly, Section 4617(b)(2)(J) preempts Section 35C(h) because the latter provision purports to control the manner in which the Conservator sells assets, including decisions about fundamental issues such as choice of buyer and price.[7]

### C. HERA Preempts Section 35C(h) Because It Occupies the Relevant Field

HERA fully occupies the field with regard to the Conservator's preservation and conservation of the Enterprises' assets and FHFA's regulatory authority over the Enterprises' safety and soundness. As the court in *FHFA v. City of Chicago* recognized, "Congress intended for FHFA to possess exclusive authority over Fannie and Freddie's business operations— including their management of the homes in which they have a security interest," which "are the most important assets Fannie and Freddie have." 962 F. Supp. 2d at 1060. The Commonwealth mischaracterizes the "field" at issue, asserting that HERA does not occupy "the traditional state domains of foreclosure and property conveyance law." Opp. at 17. But the relevant field is the supervision of the Enterprises and preservation of their assets, not state foreclosure and property sales laws. *See Chicago*, 962 F. Supp. 2d at 1060 (holding that the field occupied by HERA is not "regulation of local properties," but rather "preserv[ation of] the assets of Fannie Mae and Freddie Mac.") The Commonwealth argues that state laws that "tangentially brush up against a GSE business activity" are not field-preempted by HERA, Opp. at 18, but that is not the issue

---

[7] The Commonwealth argues that Section 35C(h) preserves and conserves Enterprise assets by "facilitating property sales at fair market value." Opp. at 16 n.14. HERA bars this attempt to have the Court second-guess or supplant the Conservator's decisions about preserving and conserving assets. *See Sonoma*, 710 F.3d at 993 ("[I]t is not our place to substitute our judgment for FHFA's . . . ."). Moreover, although the Commonwealth says that the Conservator might be able to reject sales in the event of outright fraud, Opp. at 16 n.14, it does not substantively address Defendants' other concerns—such as borrowers' use of Section 35C(h) to reacquire the property below the outstanding mortgage debt instead of pursuing FHFA-approved loan modifications.

here. Section 35C(h) encroaches into the Enterprises' core business operations, a field that HERA fully occupies, by dictating to whom and at what price the Enterprises may sell "the most important assets [they] have." *See Chicago*, 962 F. Supp. 2d at 1060.

## III. SECTION 35C(h) DOES NOT APPLY TO REO SALES

Section 35C(h) indisputably applies only to "creditors." The Commonwealth argues that "a creditor remains a 'creditor' under the statute even after foreclosure," purportedly because the "foreclosure sale does not extinguish the mortgage loan . . . , only the associated lien." Opp. at 20. The Commonwealth explains that "following foreclosure, the creditor . . . becomes an *unsecured* 'creditor' as to the deficiency balance." *Id*. (emphasis added). But only a *secured* party can be a "creditor"—the statute defines a "creditor" as "a person . . . that holds or controls . . . *a mortgage loan securing a residential property*." § 35C(a) (emphasis added). "Mortgage loan" is further defined as "a loan . . . secured wholly or partially by a mortgage on residential property." Based on these definitions, a person ceases to be a "creditor" as defined by the statute once the mortgage is foreclosed, because the mortgage no longer secures the loan. The Commonwealth has thus conceded that Section 35C(h) does not apply to post-foreclosure sales.

The Commonwealth's concession aside, Section 35C(h), like the rest of *An Act Preventing Unlawful and Unnecessary Foreclosures*, regulates foreclosure sales, not REO sales, and applies only to property currently secured by Enterprise loans. *See* Mot. at 18-20. The Commonwealth's response is that some conduct addressed in the Act could occur after the foreclosure sale has been completed, Opp. at 19-20 & n.15, but all of this conduct is intertwined with foreclosure sales. Nothing in the text or legislative history of Section 35C(h) extends the statute to REO sales. Finally, the Commonwealth does not dispute that even if Section 35C(h) could apply to REO sales, it would only affect the affidavit requirement, not the "make-whole" requirement. Mot. at 20.

## CONCLUSION

As Defendants have shown, Section 4617(f) bars this action and HERA preempts the statute that the Commonwealth seeks to enforce. Accordingly, the Court should dismiss this action with prejudice.

| | |
|---|---|
| Respectfully submitted, | Respectfully submitted, |
| FEDERAL HOUSING FINANCE AGENCY | FEDERAL HOME LOAN MORTGAGE CORPORATION |
| By Its Attorneys, | By Its Attorneys, |
| */s/ Eric F. Eisenberg* | */s/ Justin M. Fabella* |
| Eric F. Eisenberg (BBO No. 544682) | Justin M. Fabella (BBO No. 654859) |
| eeisenberg@hinckleyallen.com | jfabella@hinshawlaw.com |
| Robert T. Ferguson, Jr. (BBO No. 670314) | Gregory S. Bombard (BBO No. 679720) |
| rferguson@hinckleyallen.com | gbombard@hinshawlaw.com |
| HINCKLEY, ALLEN & SNYDER LLP | HINSHAW & CULBERTSON LLP |
| 28 State Street | 28 State Street, 24th Floor |
| Boston, MA 02109-1775 | Boston, MA 02019 |
| Tel: (617) 345-9000 | Tel: 617-213-7000 |
| Fax: (617) 345-9020 | Fax: (617) 213-7001 |
| Asim Varma (admitted pro hac vice) | |
| Asim.Varma@aporter.com | FEDERAL NATIONAL MORTGAGE ASSOCIATION |
| Howard N. Cayne (admitted pro hac vice) | |
| Howard.Cayne@aporter.com | |
| Michael A.F. Johnson (admitted pro hac vice) | By Its Attorneys, |
| Michael.Johnson@aporter.com | */s/ Lawrence Kulig* |
| ARNOLD & PORTER LLP | Lawrence Kulig (BBO No. 544656) |
| 555 12th Street NW | lkulig@eckertseamans.com |
| Washington, DC 20004 | ECKERT SEAMANS |
| Tel: (202) 942-5000 | Two International Place, 16th Floor |
| Fax: (202) 942-5999 | Boston, MA 02110 |
| | Tel: (617) 342-6875 |
| Alfred M. Pollard (appearing pursuant to Rule 83.5.3(a)) | Fax: (617) 342-6899 |
| alfred.pollard@fhfa.gov | |
| FEDERAL HOUSING FINANCE AGENCY | |
| 400 7th Street SW | |
| Washington, D.C. 20024 | |
| Tel: (202) 649-3804 | |
| Fax: (202) 649-1071 | |

Dated: August 18, 2014

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on August 18, 2014

/s/ Eric F. Eisenberg
Eric F. Eisenberg